[Sac. No. 3872. In Bank.—December 7, 1926.]

In the Matter of the Estate of GEORGE K. RIDER, Deceased. MARY C. CROSBY et al., Appellants, v. EDWARD RIDER et al., Respondents.

[Sac. No. 3873. In Bank.—December 7, 1926.]

In the Matter of the Estate of GEORGE K. RIDER, Deceased. JOSEPH H. CROSBY, Executor, etc., Appellant, v. EDWARD RIDER et al., Respondents.

[1] ESTATES OF DECEASED PERSONS—WILLS—TRUSTS—PROVISION FOR PAYMENT OF DEBTS OF ANOTHER AFTER DEATH—VALIDITY OF.—Where a will contains a trust covering all the property of the decedent for the purpose, among others, of paying all the net income to the widow of the deceased, a provision, in effect, that after the death of the widow all of her debts and liabilities, funeral expenses and expense of last illness, shall be paid by the trustee and the remainder of the trust fund shall vest in certain named beneficiaries, is not void under sections 715 and 716 of the Civil Code, on the theory that it creates a trust in favor of the creditors of the widow and suspends the power of alienation for a period possibly beyond the lives of persons in being at the time of the creation of the trust.

[2] ID.— RIGHTS OF BENEFICIARIES. — The provision of such will directing the trustee to pay the debts, etc., of the widow of the deceased, creates a mere charge upon the property of the estate in the hands of the trustee, but does not create a trust, and upon the death of the widow the beneficiaries take the estate subject only to such charge.

[3] ID. — VESTED INTERESTS — PRESUMPTIONS. — The law favors the vesting of estates and every interest will be presumed to be vested unless a contrary intention is shown.

[4] ID.—INTENTION TO VEST INTERESTS.—Where a will contained a trust covering all the property of a decedent for the purpose, among others, of paying the net income to the widow of the deceased during her lifetime and provided that "thereafter" the trustee should pay all of the debts, etc., of the widow and that "thereupon" the remainder of the trust fund should vest in and go to the several parties named in the will as beneficiaries, the testator in making the latter bequest invariably using the expres-

1. See 25 Cal. Jur. 301.
3. See 10 Cal. Jur. 103; 10 R. C. L. 648.

sion "I will, bequeath and devise," the interests of the beneficiaries vested upon the widow's death.

[5] ID.—CONSTRUCTION OF WILL—RULE.—The first and great rule in the exposition of wills, to which all other rules must bend, is, that the intention of the testator, expressed in his will, shall prevail, provided it be consistent with the rules of law.

[6] ID.—PROVISION FOR PAYMENT OF WIFE'S DEBTS—SEVERABLE PARTS OF TRUST—VALIDITY OF.—Even if the provision in such will for the payment of the wife's debts after her death created an invalid trust, its invalidity did not impair the validity of the other legal portions of the will, as the elimination of this provision would not impair the scheme of the will as a whole.

[7] ID.—VALID AND INVALID TRUSTS—CONSTRUCTION.—The rule is that where there are several independent trusts, created by a will, some of which are legal, while others are in contravention of the statute regulating uses and trusts or the statutes against perpetuities, the estate of the trustee will be upheld to the extent necessary to enable him to execute the valid trusts, and will only be void as to the illegal or invalid trusts; and the question whether the valid clauses can stand depends upon whether or not the invalid ones are so interwoven with them that they cannot be eliminated without interfering with and changing the main scheme of the testator.

---

(1) 30 Cyc., p. 1520, n. 88. (2) 30 Cyc., p. 1520, n. 88; 40 Cyc., p. 1743, n. 36. (3) 40 Cyc., p. 1650, n. 81. (4) 40 Cyc., p. 1679, n. 88. (5) 40 Cyc., p. 1386, n. 85, p. 1388, n. 90. (6) 40 Cyc., p. 1420, n. 53. (7) 40 Cyc., p. 1419, n. 51, p. 1420, n. 54.

APPEALS from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Reversed.

The facts are stated in the opinion of the court.

Butler, Van Dyke & Desmond, Devlin & Devlin and Fitzgerald, Abbott & Beardsley, for Appellants in Sac. No. 3872.

Thomas B. Leeper, O. G. Hopkins and Arthur C. Huston for Respondents.

White, Miller, Needham & Harber for Appellants in Sac. No. 3873.

---

5. See 26 Cal. Jur. 883; 28 R. C. L. 211.
6. See 26 Cal. Jur. 909.
7. See 25 Cal. Jur. 298; 26 R. C. L. 1205.

Thomas B. Leeper, O. G. Hopkins and Arthur C. Huston for Respondents.

CURTIS, J.—The deceased, George K. Rider, died in the city of Sacramento on the sixth day of July, 1921. He left a last will and testament dated November 14, 1919, which was on the twenty-first day of July, 1921, duly admitted to probate in the superior court of the county of Sacramento. Said will is as follows:

"In The Name of God, Amen

"I, George K. Rider, of the County of Sacramento, State of California, being of sound and disposing mind and memory, and not acting under duress, menace, fraud or undue influence of any person or persons whatsoever, do hereby make, publish and declare this to be my last will and testament.

"First: I hereby revoke any and all wills by me at any time heretofore made.

"Second: I hereby nominate, constitute and appoint National Bank of D. O. Mills and Co., a banking corporation, as the executor of this my last will and testament, and also as Trustee of the Trusts hereinafter created, and I hereby direct that no bond or undertaking of any kind be required of my said Executor, either as such Executor or as such Trustee, or in the performance of any power or duty imposed upon it in connection with my Estate, or the probate of this my last will and testament, and the said trusts, either hereunder or by statute.

"I hereby authorize, empower, direct and instruct my said Executor to sell, dispose of and convert into cash, at the earliest practical moment consistent with good business judgment, all of the property and effects of my said Estate, both real and personal (excepting, however, any bonds then held by me and excepting also such personal property as in herein specifically devised), in order that the bequests herein made may be promptly paid and the purposes of this my will performed with reasonable expediency and dispatch.

"I hereby authorize, and empower my said Executor to sell at public or private sale, and without obtaining any previous order of Court therefor, any property, real, personal or mixed, which may belong to me at my death, ex-

cepting however, bonds and such personal property as is
herein specifically devised or bequeathed, which said prop-
erty is not to be sold, but to be distributed as hereinafter
provided.

"I further authorize and empower my said Executor, in
its discretion, pending the administration of my Estate, and
pending such time as a sale of the property thereof may
be made, to continue to carry on any and all business ven-
tures in which I may be interested or engaged at the
time of my death, either singly or in a copartnership or
association with others, in order that, and until such time as,
the same may be sold to the best business advantage as the
judgment of my Executor, or its officers and directors, shall
direct.

"I authorize, empower and direct my said Executor in
the discretion of its executive officers or Board of Directors
to settle and compromise, upon such terms as to them shall
seem proper, any litigation or dispute in which my Estate
or any part thereof shall be involved.

"Third: I give, devise and bequeath to my said Trustee
above named all of the property and effects left by me at
the time of my death or in which I then have any interest
and wheresoever the same may be situate, subject at all
times to the power of my Executor and the authority hereby
vested in such Executor to convert the same into cash, in
trust nevertheless, and for the uses and purposes as fol-
lows, to-wit:

"To invest and reinvest the same in safe interest bearing
securities, and to lend the same upon promissory notes, se-
cured by first mortgages upon real property or upon ample
and safe collateral security, and to pay over the net in-
come derived therefrom monthly, to my wife, Annie Rider,
if she survives me, so long as she shall live. And there-
after, in the event of her death, to pay all her just debts
and liabilities, funeral expenses and expenses of last ill-
ness, and thereupon the remainder of said trust fund then
in the hands of my said Trustee, shall be vested in and shall
go to the several parties who are hereinafter named as
beneficiaries in the succeeding paragraphs of this my last
will and testament and in the amounts and proportions as in
such succeeding paragraphs provided.

"Fourth: If my said wife, Annie Rider, should not survive me, then and in such event (and also in the event of her death after mine, but then subject to the trusts hereinabove created,) I make the following bequests and devises, hereby disposing of all of the corpus of my said Estate in manner following, to-wit:

"(a) I will, devise and bequeath to the Right Reverend Bishop of the Diocese of Sacramento, the sum of Five Thousand Dollars ($5000.00), to be used and expended by him for general repairs of the Catholic Cathedral, situate at the Northeast corner of Eleventh and K Streets, in the City of Sacramento."

(Then follows subsections (b) to (n), inclusive, whereby said testator provides for thirteen separate bequests to individuals and institutions which he desires to favor.)

"(o) I will, devise and bequeath to Mrs. Mary C. Crosby, now residing at 3116 Telegraph Avenue, Oakland, California, the sum of Twenty-five Thousand Dollars ($25,000.00) provided she be then living at the time of the death of both my wife and myself. Otherwise this bequest shall be void.

"(p) I will, devise and bequeath to Joseph H. Crosby, now residing at 3116 Telegraph Avenue, Oakland, California the sum of Two Thousand Dollars ($2000.00).

"(q) I will, devise and bequeath to Margaret Faber, now residing at 3116 Telegraph Avenue, Oakland, California, the sum of Two Thousand Five Hundred Dollars ($2500.00).

"(r) I will, devise and bequeath to Hazel Lamphrey of Sacramento, California, the sum of One Thousand Dollars ($1,000.00).

"(s) I will, devise and bequeath to Hattie Kunz the sum of Two Hundred Fifty Dollars ($250.00), and to Emma Kunz the sum of Two Hundred Fifty Dollars ($250.00), both of said persons now residing at 2131 10th Street, Sacramento, California. In the event of the death of either of said last named persons before the death of both my wife and myself then the bequest hereby made to such person shall go to the survivor. In the event of the death of both of said persons before the death of both my said wife and myself then these bequests shall be void.

"(t) I will, devise and bequeath to my said Trustee above named, the sum of Five Hundred Dollars ($500.00),

in trust nevertheless, for the following uses and purposes, to-wit:

"To invest and reinvest the same in safe interest bearing securities or to lend the same on promissory notes secured by first mortgage upon real property or upon ample and safe collateral security and to pay the annual issues and profits thereof for the care and preservation of and to keep in good condition the lot or plot in the City Cemetery, known as the Rider plot, wherein are buried my father, John Rider, and my mother, Nancy A. Rider.

" (u) I will, devise and bequeath my library, books, book-cases and desk to Evelyn M. Crosby and William J. Crosby, share and share alike.

" (v) All of the rest, residue and remainder of my said estate I will, devise and bequeath to my said trustee above named, in trust nevertheless, for the following uses and purposes, to-wit:

"To invest and reinvest the same in safe interest bearing securities or to lend the same upon promissory notes secured by first mortgages upon real property or upon ample and safe collateral security during the lifetime of Evelyn M. Crosby and William J. Crosby and out of the income thereof to pay to Margaret Faber, now residing at 3116 Telegraph Avenue, Oakland, California, during her lifetime the sum of One Hundred Fifty Dollars ($150.00) per month; to pay to William Egan, now residing at 3116 Telegraph Avenue, Oakland, California, during his lifetime, the sum of Fifty Dollars ($50.00) per month; the remainder of such income shall be paid share and share alike to Evelyn M. Crosby and William J. Crosby, or the survivor of them during the continuance of this trust, provided however, that in the event of the arrival of both Evelyn M. Crosby and William J. Crosby or the survivor of them at the age of 21 years, then this trust shall cease and determine and the corpus of said trust fund shall then go and belonged to the said Evelyn M. Crosby and William J. Crosby in equal portions, share and share alike, or to the survivor of them, then living. Provided, however, that the bequest of the residue hereinabove made which shall become the absolute property of the said Evelyn M. Crosby and William J. Crosby upon the arrival of both of them or the survivor of

them, at the age of 21 years, if then living, is conditional upon and impressed with the burden of the payment of the following sums for the following periods of time, to-wit:

"That there shall be paid out of the corpus of said residue or the income therefrom, if such income be sufficient, to Margaret Faber, the sum of One Hundred Fifty Dollars ($150.00) per month during the term of her natural life and to William Egan, the sum of Fifty Dollars ($50.00) per month during the term of his natural life.

"(w) I direct that during the probate of this my last will and testament and during the administration of my said estate, that there be paid out of the funds in the hands of my Executor, dating from the day of my death and ending on the date of the distribution of my said estate, to Evelyn M. Crosby and William J. Crosby, each the sum of Seventy-five Dollars ($75.00) per month, such payment, however, to cease as to either or both of said last named parties upon the death of either or both of them prior to distribution.

"(x) I have intentionally omitted to provide herein for or to make any bequest to any of my brothers or any other of my heirs-at-law, or to any other person except those herein specifically mentioned. I have living at the date of the execution of this my will, two brothers, William Rider and Edward Rider. Both of my said brothers are amply able to provide for themselves, and I have omitted them from the terms of this my last will and testament after full consideration and due deliberation and with full intention.

"(y) In the probate of this my last will and testament, and in all matters concerning or affecting my said estate, I request my said Executor to employ as its Attorney and Counsel, J. W. S. Butler, and so far as I may do so under the law, I hereby appoint him as Attorney and Counsel for said Executor. I make this statement for the reason that the said J. W. S. Butler, for a long period of time, has acted as my Counsel and legal adviser and he has a more thorough knowledge of my business and affairs than any other person.

"In Witness Whereof, I have hereunto set my hand and seal this 14th day of November, 1919.

"GEORGE K. RIDER.    (Seal)."

The said deceased left an estate consisting of real and personal property which was later appraised at an amount in excess of $200,000. The National Bank of D. O. Mills & Co., named in said will as the executor thereof, was appointed as such executor by the probate court and thereafter qualified and entered upon the discharge of its duties.

Upon the hearing of the petition for distribution, one of the respondents, Edward Rider, appeared and contested the right of the appellants to share in the distribution of said estate and claimed that he, as an heir at law of said deceased, was entitled to have an undivided one-half of the said estate distributed to him, subject only to a life interest in the trust fund created by said will in favor of the widow of said deceased, the said Annie Rider. This claim on the part of said respondent was based upon the contention that all that portion of the trust provision of said will except that in favor of the wife of deceased to receive during her lifetime the income from said trust fund, was void for the reason that it was in conflict with sections 715 and 716 of the Civil Code of this state. Said respondent further contended that the said Annie Rider, the wife of said deceased, had waived all her right as surviving wife and heir at law of said decedent to receive any of the property of said estate except a life interest in said trust fund by her written waiver signed by her and annexed to said will. Said written waiver is as follows:

"I, the undersigned, Annie Rider, the wife of George K. Rider, do hereby certify and declare that I have read the above and foregoing which is the last will and testament of George K. Rider; that I am familiar with all of the terms of said last will and testament; that the same is made with my full knowledge and consent; that I hereby accept the terms of said last will and testament and specifically waive any and all rights which I may have under the law or otherwise as heir-at-law or surviving wife or otherwise, in and to any of the property and effects of said George K. Rider, except such bequests as are specifically made to me and in my favor in said last will and testament; and I hereby accept the bequests contained in said last will and testament in full of all property rights or other rights of any kind and character to which I may be entitled under

the laws of the State of California as surviving wife of the said George K. Rider.

"Witness my hand this 14th day of November, 1919.

"ANNIE RIDER."

The probate court sustained the claim of said respondent and by the decree of distribution distributed the entire estate of said deceased to the said National Bank of D. O. Mills & Co. in trust for the use and benefit of decedent's widow, Annie Rider, for the term of her natural life and all the rest and residue thereof to respondents herein, except that there was ordered paid by said decree upon the death of the said Annie Rider all the bequests made by said deceased in paragraph four of his will except those mentioned and provided for in subsections (o), (p), (q), (u), (v), and (w) of said fourth paragraph. The bequests which were ordered paid by said decree, however, were directed to be paid, so it is recited therein, "as per agreement, wishes and assignments of respondents." None of the bequests, however, in favor of any of the appellants herein were by said decree directed to be paid. This provision of the decree distributing these bequests is not material to any of the issues raised on either of the appeals taken in this matter and it will probably not be necessary to again refer to it.

Two appeals were taken from said decree of distribution and they are before us upon separate records. One of said appeals is by the National Bank of D. O. Mills & Co., the trustee named in said will, and the following named persons, all of whom were named as legatees in said fourth paragraph of said will: Mary C. Crosby, Joseph H. Crosby, Evelyn M. Anderson, formerly Evelyn M. Crosby, William J. Crosby, and Margaret Faber, all of whom were excluded by said decree of distribution from participating in the distribution of said estate. The said William J. Crosby being a minor, appears by his guardian *ad litem*, Joseph H. Crosby. The second of said appeals was taken by the said Annie Rider, the widow of decedent. As the validity of the trust provision of said will, except that portion thereof in favor of the said Annie Rider, is one of the main questions presented on each appeal, the two appeals will be considered together. Should said trust provision be found to be invalid, there will then remain the further question presented by the appeal of Annie Rider as to the

effect of the written waiver of said widow attached to the will of said deceased, and the validity of that portion of the decree of distribution based upon the construction given said written waiver by the probate court, which resulted in the distribution of the whole of said estate, except a life interest in the trust fund provided in said will in favor of the widow, to the respondents herein to the entire exclusion of any right therein of the said Annie Rider, either as the surviving wife or heir at law of said decedent. The respondents herein are the said Edward Rider, a brother of said deceased, and Hazel Lamphrey and Genevieve Wallace, daughters of a deceased brother of the testator, whose death took place prior to that of the testator. Since the perfecting of her appeal Annie Rider has died, and Joseph H. Crosby, the executor of her last will and testament, has been substituted in her place as a party hereto.

The position of the widow of said decedent, Annie Rider, relative to the validity of those portions of said will in question was that it was her desire that they be enforced according to their terms. She did not question their validity and made no contention that they were illegal in any particular. She therefore joined with the other appellants herein in asking to have the will of decedent in its entirety declared legal and all the terms given the effect intended for them by the testator. She did contend, however, that in case portions of the will which the probate court declared void were finally determined to be contrary to the law of this state and therefore void, that she was entitled to share in the distribution of his estate as the surviving wife and heir at law of her deceased husband.

[1] The validity of the trust created by said will other than that portion thereof in favor of the widow, it is conceded by all the parties hereto, depends upon the effect to be given the following provisions found in the third paragraph of said will: "and thereafter in the event of her death to pay all her just debts and liabilities, funeral expenses, and expenses of last illness, and thereupon the remainder of said trust fund then in the hands of my said trustee shall be vested in and shall go to the several parties hereinafter named as beneficiaries." The probate court construed this provision of the will as creating a

trust in favor of the creditors of Annie Rider, the widow of said deceased, and that its effect was to suspend the power of alienation for an indefinite period beyond the life of said Annie Rider and possibly beyond the lives of the persons in being at the time of the creation of said trust. Accordingly, the court held that this provision of the will was in violation of sections 715 and 716 of the Civil Code and was for that reason void. Not only did the probate court hold that this provision of the will was void, but it further held that all of the provisions of the fourth paragraph of said will were also void and declared that the bequests which the testator attempted by the terms of said paragraph to make in favor of the individuals and institutions therein enumerated were invalid and void by reason that none of said bequests was to take effect within the period of time limited by said sections 715 and 716 of the Civil Code.

[2] Appellants in attacking this conclusion of the probate court contend that the provision directing the trustee to pay the debts, liabilities, funeral expenses, and expenses of last illness of the wife is a mere charge upon the property of the estate in the hands of the trustee; that it does not create any trust whatever; but that upon the death of the said Annie Rider, the beneficiares in paragraph four of said will take the entire estate subject only to said charge for the payment of the debts and expenses of the deceased widow. We find but few adjudicated cases where any provision, even similar to that now under consideration, has been construed by the court. In the case of *Scofield* v. *Olcott*, 120 Ill. 362 [11 N. E. 351], the testator by his will left all his estate to trustees with directions for them to hold the same and to pay the income therefrom to his wife during her lifetime or so long as she remained unmarried. Upon the marriage or death of his wife the trustees were directed to convert into money sufficient of his estate to pay certain legacies. Said legacies were to be paid within three months after the death or marriage of the wife and the trustees were then directed to pay the rest and residue of the estate to the son of said testator as soon as said legacies shall have been paid. It was contended that the son did not take under the will for the reason that his estate in remainder did not take effect un-

til three months after the wife's death and until the lega-
cies had been fully paid. The supreme court of Illinois
refused to follow this reasoning and in ruling adversely to
this contention did so in the following language (p. 355):
"It is said that in this case the interest in question was
not a vested one at the death of the testator, for the al-
leged reason that the estate in remainder was not to take
effect at the expiration of the life-estate, but after the
lapse of three months thereafter, during which time prop-
erty was to be sold, and out of the proceeds of such sales
legacies to the amount of $15,000 were to be paid. This
position, however, is not sound. A devise to a person af-
ter the payment of debts and legacies is not contingent
until such debts and legacies are paid. Such a devise
confers an immediately vested interest. The words of ap-
parent postponement are considered only as creating a
charge."

In *McGraw* v. *McGraw*, 176 Fed. 312, the testator also
conveyed his property to trustees. One of the conditions
of the trust was that the trustees were to pay certain of
the income from the property of the estate to the decedent's
wife and daughter. The will further provided: "Upon
the death of my said wife said trustees out of the gross in-
come of said estate shall pay the expenses of her funeral
and burial in proper and fitting manner and of the inscrip-
tion of her name upon the monument above provided
for. . . .

"Upon the death of both my said wife and my said
daughter, and after the payment of all my said debts, my
remaining estate, real and personal, shall be distributed by
my said trustees as follows":

The decision in this case was rendered by Mr. Justice
Harlan, later of the supreme court of the United States,
and in part was as follows:

"The general contention of the plaintff is that the pro-
visions of the will amount to a prohibition, expressed or
implied, of the 'alienation' of the McGraw building dur-
ing a period of time not based on lives in being at the
date of the creation of the estate. And that contention
rests principally on those clauses directing that the estate
shall not be finally distributed except upon the death of
both the wife and daughter, and after the payment of the

testator's debts. Items 9 and 10. Thus, it is argued, the alienation of that estate is suspended not only during the lives of the wife and daughter, but must await the payment of debts which might not occur until long after the death of the wife and daughter. We cannot accept that view. If the testator had given no specific direction for the payment of debts, his estate would still have been charged with such debts; . . . The direction, therefore, in the will not to finally 'distribute' the estate until the debts were paid, should be interpreted to mean nothing more than what the law required as to payment of debts. We cannot agree that the will created a separate, specific, independent trust for the payment of debts to continue, if necessary, beyond the lives of the wife and daughter. If the will were so construed, there would be some ground to contend, as to the McGraw building and lots, that the power of 'alienation' had been suspended beyond the term of two lives in being at the date of the creation of the estate. (*State* v. *Holmes*, 115 Mich. 456 [73 N. W. 548]; *Casgrain* v. *Hammond*, 134 Mich. 419 [104 Am. St. Rep. 610, 96 N. W. 510].) But we do not so construe the will. In effect it provided that the estate created was to be enjoyed after the death of the wife and daughter, subject to the payment of any debts legally chargeable upon it. That is, the words 'after the payment of all my said debts' should be held to mean nothing more than if the testator had said, in terms, that the property devised could be employed by the beneficiary after the death of the wife and daughter, 'subject to the payment of all my said debts.' We accept that view. Sound reason, we think, supports this view, and it is sustained by many authorities."

It is a significant circumstance to be observed, that while said opinion discusses and decided that the "clauses directing that the estate shall not be finally distributed except upon the death of both the wife and daughter, and after the payment of the testator's debts" did not render the bequests following this clause void on account of the direction therein for the payment of the testator's debts, yet no question appears to have been raised as to the validity of said bequest on account of the direction to the trustees to pay the expenses of the funeral and burial of the testator's wife. Evidently they did not consider that

this provision of the will directing the payment of these expenses after the wife's death constituted any serious defect in the will or one which would render the bequests in question of doubtful validity. The decision, however, is authority, supporting appellants' contention that under the provisions in a will directing the payment of a bequest after the payment of debts, the beneficiaries take the bequest subject to the payment of the debts. The case of *Shipman* v. *Rollins,* 98 N. Y. 311, was brought by the surviving executor to secure a judicial construction of a will involving certain bequests made to take effect after the death of the wife by the testator. This will contained a provision similar to that in the Rider will directing the payment of Mrs. Rider's debts after her death and read as follows: "After the death of my wife, what may be left of the real and personal estate hereinbefore devised to her, or the proceeds thereof, I authorize my executors to sell, and add the proceeds of said sales to the amount which is to produce her annuity; and from this fund (if she leaves no cash or property of her own) I direct them to pay her funeral expenses, and such debts as she may have contracted." The bequests therein were held valid, but again neither the court nor counsel seemed to have raised any question as to their invalidity by reason of the provision of the will directing the executor to pay the wife's debts and funeral expenses after her death. These authorities, although they cannot be regarded as absolutely decisive of the questions involved, indicate that the trend of judicial decisions is not to construe a provision of a will similar to that in the Rider will, directing the trustees to pay the debts of the wife after her death, as creating a separate trust in the trustees in favor of the creditors of the wife, but rather to regard such a provision simply as a charge upon the estate then in the hands of the trustees, and that the beneficiaries to whom said estate has been bequeathed or devised by the will succeed to the same subject to such charge. There are no authorities to the contrary to our knowledge. Under such a construction, there being no intervening trust, the beneficiaries to whom the property is given upon the death of the wife have a vested interest in their respective bequests upon such death. [3] This is in accord with the well-established doctrine

199 Cal.—47

that the law favors the vesting of estates and every interest will be presumed to be vested unless a contrary intention is shown (10 Cal. Jur. 603; Civ. Code, sec. 1341; *Williams* v. *Williams*, 73 Cal. 99 [14 Pac. 394]). On page 102 ·of the Williams case the court states the law in the following language: "The law favors the vesting of interests, and every interest will be presumed to be vested, unless a contrary intention is clearly manifest."

[4] It was also the evident intention of the testator that the beneficiaries named in paragraph four of his will should upon the death of his wife become entitled to their respective bequests, subject only to the payment of the debts of the wife and her funeral expenses and expenses of last illness. This is evident from the terms of the will, notwithstanding the use of the words "thereafter" and "thereupon" in the provisions of the will under discussion. These words must be construed in connection with the words used by the testator in paragraph four where the several bequests are provided for. Invariably the testator in making these bequests uses the expression, "I will, bequeath and devise." These latter words unquestionably express an intent on the part of the testator to give to the beneficiaries therein named a vested interest in the respective bequests upon the wife's death (*Estate of Ritzman*, 186 Cal. 567, 569 [199 Pac. 783] ; *Estate of De Vries*, 17 Cal. App. 184, 190, 192 [119 Pac. 109]). [5] In *Estate of Ritzman*, supra, the court quotes the language of Chief Justice Marshall found in *Smith* v. *Bell*, 6 Pet. (U. S.) 68 [8 L. Ed. 322, see, also, Rose's U. S. Notes], as follows: "The first and great rule in the exposition of wills, to which all other rules must bend, is, that the intention of the testator, expressed in his will, shall prevail, provided it be consistent with the rules of law." With this rule as our guide there could be no question as to the ultimate construction to be placed upon the will of George K. Rider, deceased. His intention is clear and perfectly apparent. His first wish was to provide his wife with the entire income of his estate so long as she should live and that all her debts, liabilities, and funeral expenses should be paid. Upon her death the residue remaining in the hands of the trustees was by the testator in plain and unequivocal language given to the beneficiaries named in the fourth par-

agraph of his will. In unmistakable language he further indicated that it was his intention that the respondents should not receive any part of his estate, except the bequest of $1,000 to Hazel Lamphrey. The only claim that testator's will is inconsistent with the rules of law is based upon the provision requiring the payment of the wife's debts. We have already shown that a reasonable interpretation of the meaning of this provision does not render it inconsistent with the provisions of any of the rules of law of this state. The will therefore, as a whole, expresses the intention of the testator as to the disposition of his estate and should be upheld as his final testamentary act.

Numerous authorities have been cited by respondent in support of his contention that if the provisions of the will in question created a trust it suspended the power of alienation beyond the lives of those in being, or that it possibly did so; that accordingly the interest of the beneficiaries under paragraph four of the will does not become vested upon Annie Rider's death, but only at the termination of the trust to pay her debts, and, therefore, there are no persons in being during the period of the execution of this trust by whom an absolute interest in possession could be conveyed. We are satisfied that the exposition of the law as set forth in these authorities is a correct statement of the legal principles presented therein, but these authorities are, in our opinion, inapplicable to the facts in the present proceeding, inasmuch as the facts herein fail to show that any trust to pay the wife's debts was created by said will.

[6] For another reason we think the bequests in paragraph four of the will should be held to be valid. The provision for the payment by the trustee of the wife's debts and liabilities, funeral and expenses of last illness is in our opinion severable from the other provisions set forth in the will and cannot be considered as a necessary and integral part of the testator's scheme of disposing of his property by last will and testament. This scheme of the testator contemplated that his wife should enjoy the entire income of his estate so long as she might require said income, or, in other words, during her lifetime. When her wants were all met and she had no further need of said property and it could be of no further use to her, the

scheme of said testator contemplated that the property of his said estate should then go to the beneficiaries in the amounts and in the manner provided in paragraph four of said will. It is true that it was a part of this scheme that the wife's debts and liabilities, funeral and expenses of last illness should be paid after her death by said trustee, but the payment of these obligations of his wife was a trivial and inconsequential part of the whole scheme of the testator. This part can be eliminated from the whole scheme without any serious impairment of the scheme as a whole. With this part of the scheme eliminated the material and essential features of the testator's plan for the disposition of his estate by last will and testament remain intact and every person and institution which said testator desired to share in his bounty receives the amount in the precise manner and at the exact time designated by said testator in his said last will and testament. Therefore, conceding that the provisions of the will in reference to the payment of the wife's debts after her death created an invalid trust, yet its invalidity will not impair the validity of the portions of the will which are legal (*Estate of Phelps*, 182 Cal. 752 [190 Pac. 17]; *Estate of Whitney*, 176 Cal. 19 [167 Pac. 399]; *Estate of Pichoir*, 139 Cal. 685 [73 Pac. 606; *Estate of Fair*, 136 Cal. 79 [68 Pac. 306]). In Estate of Phelps, the rule is prescribed as follows: **[7]** "Where there are 'several independent trusts, some of which are legal, while others are in contravention of the statute regulating uses and trusts or the statutes against perpetuities, the estate of the trustee will be upheld to the extent necessary to enable him to execute the valid trusts, and will only be void as to the illegal or invalid trusts.' It is an application of rule stated in section 1317 of the Civil Code that where the intention of the testator cannot have effect to its full extent, it must have effect as far as possible. The rule is also stated as follows: 'Where there are valid and invalid clauses in a will, the question whether the valid clauses can stand depends upon whether or not the invalid ones are so interwoven with them that they cannot be eliminated without interfering with and changing the main scheme of the testator.' . . . A perusal of the trust clause shows that the preliminary

portion providing for the annuities to the brothers and sisters temporarily until the accumulation of the fund was but a minor part of the main scheme of the testatrix. It is temporary in character, in the nature of a family allowance. It was intended merely to provide an income for them during the period of the settlement of the trust. The principal parts of the plan were to provide the fund of two hundred and forty thousand dollars, to divide the income thereof among the brothers and sisters during their respective lives and give the remainder to their children or heirs as specified; to pay the specific legacies mentioned in the succeeding clause and to the residuary legatees the ultimate residue. The preliminary scheme is not essential to the main plan, nor so interwoven with it that the two must stand or fall together.''

We conclude, therefore, that the bequests provided for in paragraph four of said will are valid, even though the provision in the will for the payment of the wife's debts after her death might be invalid as this latter provision is but a minor part of the general scheme of the testator and can be severed therefrom without materially affecting said general scheme. But as we have before indicated the provision providing the trustee to pay these debts of the wife after her death, is in our opinion not objectionable to the terms of sections 715 and 716 of the Civil Code or any other law of the state. It is, accordingly, a valid and legal part of the will of the testator and should be given effect with the other provisions of said will.

This conclusion that the will as a whole is valid renders it unnecessary for us to consider any of the points raised by the appeal of the surviving wife, Annie Rider. Her concern, as we have already pointed out, was as to a legal distribution of any property of said estate as to which it might be held that said deceased died intestate. The will as we construe it disposes of the whole estate of said decedent and, therefore, the questions presented by her appeal are no longer of any concern to her or anyone else.

The decree of distribution, except as to that portion thereof providing for a trust in favor of Annie Rider during her lifetime, is reversed and the probate court is directed to enter a decree distributing the property of said

estate in accordance with the terms of the last will and testament of said deceased.

Shenk, J., Richards, J., Waste, C. J., Finlayson, J., Seawell, J., and Sullivan, J., concurred.

Rehearing denied.