**Kathryn A. TUCKER, etc., Appellant,**

v.

**Vester G. BRADY, Guardian ad Litem of Doris Jean Lehman, Jacqueline Anne Lehman and James William Lehman, Appellee.**

**No. 17600.**

United States Court of Appeals Ninth Circuit.

July 3, 1962.

Behymer & Hoffman, and Gordon Hunt, Los Angeles, Cal., for appellant.

Romer & Brown, San Francisco, Cal., and Vester G. Brady, Los Angeles, Cal., for appellee.

Before CHAMBERS and MERRILL, Circuit Judges, and TAVARES, District Judge.

MERRILL, Circuit Judge.

This case arose under the Federal Interpleader Statute, 28 U.S.C. § 1335, by the filing of a complaint in interpleader by the Douglas Aircraft Company, Inc., naming as defendants the parties to this appeal. At issue is the right to death benefits in the sum of $10,651.00 payable under the Salaried Employees' Pension Plan of the aircraft company as the result of the death of its employee John Lehman. Appellant is the divorced wife of Lehman and his designated beneficiary under the pension plan. Appellee is guardian ad litem for the minor children of Lehman by a subsequent marriage. The district court, finding that appellant at the time of divorce had waived her rights as beneficiary and that the decedent had revoked his designation of her as his beneficiary, rendered judgment in favor of appellee. Upon appeal, appellant asserts that the determination of the district court was against the evidence and was clearly erroneous.

At the outset we note that appellant's claim is as beneficiary and not as the holder by any vested property right to the fund in question. Thus we are not concerned with the nature of the fund as community property or with the respective rights to it of the appellant and the decedent at the time of their divorce.[1]

There is no dispute as to the following facts found by the district court:

"1. The defendant, Kathryn A. Tucker and John R. Lehman were married June 29, 1940, at which time John R. Lehman was an employee of Douglas Aircraft Company, Inc., and was so employed until his death, May 19, 1959.

"2. [Since 1942] there was in effect for the benefit of the employees of Douglas Aircraft Company, Inc., a plan known as Salaried Employees' Pension Plan, under which Lehman, if living, and his validly designated beneficiary in the event of his death, or if none, such persons as the Retirement Board might choose from among his next of kin or natural objects of his bounty would be entitled to receive from said plan a certain cash death benefit.

"3. Said Retirement Board has designated the three minor defendants herein as the persons entitled to receive the benefits of said plan in the event that Lehman's designation of the defendant, Kathryn A. Tucker, is deemed revoked or waived in contemplation of law.

"4. On February 7, 1946, Lehman designated the defendant, Kathryn

1. Appellant has asserted in her opening brief upon this appeal that decedent concealed from her at the time of divorce the existence of this fund and that such concealment constituted a breach of fiduciary duty. As appellee points out, however, this contention was never made in the trial court and is raised here for the first time. Accordingly, we disregard it.

A. Tucker, nee Kathryn A. Lehman, as his beneficiary, which designation was never changed by Lehman.

"5. On March 6, 1950, the defendant, Kathryn A. Tucker and Lehman executed a property settlement agreement in the County of Los Angeles, State of California, settling and adjusting all rights of the respective parties in and to all of their property, whether real, personal, community, separate or mixed.

\*  \*  \*  \*  \*  \*

"7. Subsequent to said date, Lehman and the defendant, Tucker, were divorced and both remarried; Lehman to Betty Jean Lehman and the defendant Tucker to Clyde Tucker.

"8. The minor defendants, Doris Jean Lehman, Jacqueline Anne Lehman and James William Lehman are the minor children of John R. Lehman and Betty Jean Lehman.

"9. John R. Lehman died May 19, 1959."

Further, it is undisputed that the property settlement agreement referred to in the findings contains the following clause:

"That said parties hereto each hereby waives any and all right to the estate of the other at his or her death and forever quitclaims any and all rights to share in the estate of the other \* \* \* and hereby releases and waives all right to inherit under any will of the other \* \* \*."

This, for our purposes, is identical to the clause in Sullivan v. Union Oil Company of California, 1940, 16 Cal.2d 229, 105 P.2d 922, which the Supreme Court of California held constituted a waiver by the wife of her right to receive the proceeds of an insurance policy by virtue of the fact that she remained the named beneficiary. It was upon this basis that the district court concluded that under California law appellant had waived her rights as designated beneficiary.

■ Appellant in the district court sought to avoid the ruling in Sullivan by asserting a lack of knowledge of the existence of the pension fund at the time she entered into the agreement. This, under California law, would preclude a waiver from taking place. See, e. g., Grimm v. Grimm, 1945, 26 Cal.2d 173, 157 P.2d 841.

Notwithstanding her assertions, the district court found that appellant "had actual or constructive notice" of the pension plan. The sole question upon this appeal is presented by appellant's contention that this finding was clearly erroneous.

There is no testimony respecting knowledge. The only "evidence" is that contained in a stipulation of fact. There it is stated that " \* \* \* if the defendant, Kathryn A. Tucker, were called to testify, she would testify that at the time that said property settlement agreement was entered into she had no knowledge of the existence of said plan or her rights thereunder \* \* \*."

It must be noted that appellee did not stipulate to the ultimate fact of knowledge. Appellant's position, however, is that in absence of anything to the contrary this stipulation amounts to conclusive proof of that ultimate fact. We do not so view the situation.

■ By the device of refraining from putting her demeanor to the test, appellant should not be enabled to render credible as a matter of law that which otherwise might have been disbelieved. The court was still entitled to disbelieve her would-be testimony if it found it unlikely. This is clearly what occurred.

With common sense and normal human experience as its only available guides to credibility, the court simply found it difficult to believe that the decedent had failed to disclose to his wife his acquisition of this employment benefit; or that under the economic conditions then generally prevailing appellant had not otherwise learned of its existence. The court in its conclusions stated:

"The fact that the deceased Lehman was an employee of the Douglas

Company throughout the War, and designated his wife as beneficiary of the pension plan fund on February 7, 1946, shortly after the War, compels the conclusion that Kathryn A. Tucker did have actual or constructive knowledge of such fund at the date on which the property settlement agreement was executed; and that defendant Tucker intended by the agreement to waive or relinquish all rights which she had as beneficiary under said fund."

At the time of trial, in colloquy with counsel, the judge remarked that at the time the pension plan was adopted such employment benefits were being resorted to by defense plants where wages were frozen. He stated:

"It was a matter of common knowledge at the time. That is one reason that it's difficult for me to believe that Kathryn didn't know about this."

■ We cannot say that the court was clearly erroneous in its disbelief of appellant and in drawing inferences to the contrary in support of the appellee's claim.

Affirmed.

CHAMBERS, Chief Judge (dissenting).

I dissent.

While I do not say that it was stipulated that the wife Kathryn had no knowledge of the Douglas Company plan at the time of the execution of her property settlement agreement, yet it was agreed she would testify she had no knowledge. While normally I strongly advocate the right of a trial judge to disbelieve a party as a witness, here there was no demeanor of a live witness. Maybe Kathryn was an active partner in the family business and knew all about the Douglas fringe benefits. But I believe a goodly percentage of all American women still let their husbands handle without much question all facets of the man's work-a-day employment.

We have no way to doubt the effect of what Kathryn would have testified to: That she had no knowledge of the death benefits. No contradicting facts were offered. I do not see how, under judicial notice, it can be said that "under the economic conditions then generally prevailing" Kathryn had "learned of its [the death benefit program's] existence." That bends the mast to the breaking point.

It is my notion, absent affirmative misrepresentation or mistake, people should be held literally to their agreements such as Kathryn made in anticipation of her divorce from Lehman. But cases like Grimm v. Grimm, 26 Cal.2d 173, 157 P.2d 841, open the door and invite the result we brought through it in Connecticut General Life Ins. Co. v. Hartshorn, 9 Cir., 238 F.2d 417.

But here we tell Kathryn Lehman Tucker the open door was for Kathryn Penn Hartshorn—but not for her. Continuing affection was apparent in Hartshorn; none is shown to have lingered for Kathryn Lehman Tucker. But here we also find that six months before his death John Lehman and Betty Jean Lehman, now Betty Jean Lehman Ray, mother of Doris, Jacqueline and James, obtained a divorce. It is likely that Lehman, if he had "tended to business," would have preferred that the benefits go to his own child, Jacqueline, and to Betty Jean's two children (James and Doris) by a previous marriage whom he had adopted, for Kathryn bore him none. But he did nothing about designating new beneficiaries. The old designation remained unchanged.

I have the feeling that if John Lehman had left Kathryn with three children and Betty Jean with none, relying on Hartshorn the trial judge and we would be saying to Kathryn, "Take the money."

While I cannot be unhappy that three children presumably will get the ten thousand dollars from Douglas Aircraft as John Lehman's death benefits, it occurs to me that we do it on a doubtful basis.